**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| JEFF SPORES, individually and on behalf of all others similarly situated, | Civil Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| KIA AMERICA, INC., HYUNDAI MOTOR AMERICA, and HYUNDAI AMERICA TECHNICAL CENTER, INC., | <u>**DEMAND FOR JURY TRIAL**</u> |
| Defendants. | |

## I.   INTRODUCTION

1.      Plaintiff Jeff Spores ("Plaintiff") brings this action against defendants Kia America, Inc., Hyundai Motor America, and Hyundai America Technical Center, Inc. ("Defendants"), individually and on behalf of all similarly situated persons ("Class Members").  The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

2.      As the National Highway Traffic Safety Administration has recognized, "Motor vehicles are the primary mode of transportation for most of us, and often an indispensable part of our lives." U.S. Dept. of Transportation, NHTSA, https://www.nhtsa.gov/road-safety/vehicle-theft-prevention. The NHTSA reported that in 2020 alone, 804,000 vehicles were stolen, at an approximate cost to vehicle owners of seven billion dollars. *Id.*

3.      During the Class Period (defined below), Defendants designed, manufactured, and sold vehicles to Plaintiff and other Class Members. Defendants concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiff, in Defendants' advertising,

labeling or otherwise that these vehicles are defective and are not fit for their ordinary purpose of safe, reliable transportation.

4.      The Defective Vehicles include all 2011-2021 Kia models and all 2015-2021 Hyundai vehicles with key ignition systems ("Class Vehicles" or "Defective Vehicles"). These vehicles all lack an engine immobilizer (the "Defect'). Defendants' failure to include this safety equipment makes it very easy for the Class Vehicles to be stolen. rendering them less secure, unsafe and worth less than they would have been, had they not had the Defect.

5.      Despite their knowledge of this Defect, Defendants have not recalled the Class Vehicles to repair the Defect, have not offered Plaintiff and the other Class members a suitable repair or replacement free of charge, and have not offered to reimburse Plaintiff and the other Class members for their losses due to the Defect.

6.      Defendants actively concealed the Defect from Plaintiff and the other Class Members and failed to disclose it to them at the time of purchase or lease and thereafter.  Had Plaintiff and Class Members known about the Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them.  As a result of Defendants acts and/or omissions, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in the value of their Class Vehicles.

## II.    PARTIES

### Plaintiff

7.      Plaintiff Jeff Spores is, and at all relevant times has been, a resident of St. Paul, Minnesota.  In 2019, Mr. Spores purchased a new 2019 Kia Soul from the Rudy Luther Kia dealership in Bloomington, Minnesota.  At the time Mr. Spores purchased his vehicle, he was not aware that Class Vehicles suffered from the Defect, and only learned of the Defect through recent

stories in the news. Mr. Spores purchased the vehicle believing it would not have a defect that made it less secure and easy to steal; had he known at the time that it suffered from the Defect, he would not have purchased it or would have purchased it only at a lower cost. Mr. Spores purchased his vehicle primarily for personal, family, or household purposes.

**Defendants**

8.      Defendant, Kia America, Inc. (hereinafter "Kia"), is a California corporation that maintains its principal place of business at 111 Peters Canyon Road, Irvine, California, 92606. Defendant Kia is responsible for the manufacture, distribution, marketing, sale and leasing, either directly or indirectly, through third parties and/or related entities, of the Defective Vehicles. Defendant Kia America has a network of nearly 750 dealers throughout the U.S.

9.      Defendant, Hyundai Motor America (hereinafter "Hyundai"), is a California corporation that maintains its principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. Hyundai Motor America is a subsidiary of Hyundai Motor Company of Korea. Defendant Hyundai is responsible for the manufacture, distribution, marketing, sale and leasing, either directly or indirectly, through third parties and/or related entities, of the Defective Vehicles. Hyundai cars and sport utility vehicles are distributed throughout the United States by Hyundai Motor America and are sold and serviced by more than 800 Hyundai dealerships nationwide. Defendants Kia and Hyundai are collectively part of what is called Hyundai Motor Group ("HMG").

10.     Defendant Hyundai America Technical Center, Inc. (hereinafter "HATCI"), is a Michigan corporation that maintains its principal place of business at 6800 Geddes Road, Superior Township, Michigan 48198. Defendant Hyundai America Technical Center, Inc. is responsible for designing, planning and overall development of Hyundai and KIA vehicles tailored for the North

American market, and supplies and/or sells the Defective Vehicles, either directly or indirectly, through third parties and/or related entities.

### III.   JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Class, and members of the Class (as defined below) are citizens of states different from Defendants.

12.     This Court has specific jurisdiction over Defendants because they conduct substantial business in this District. On information and belief, Defendants have sold thousands of Defective Vehicles in this District, and Plaintiff likewise purchased his vehicle in this District. Further, products, materials, or things processed, serviced, or manufactured by Defendants anywhere were used or consumed in this state in the ordinary course of business, commerce, trade, or use. Defendants have, at all relevant times, conducted and continue to conduct business all over the country, including in Minnesota.

13.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District.

### IV.   FACTUAL ALLEGATIONS

14.     The Class Vehicles include all 2011-2021 Kia and 2015-2021 Hyundai vehicles with key ignition systems.  All of these vehicles were designed and manufactured without an engine immobilizer, which is an electronic security device that makes it difficult to start and drive a vehicle without a key.

15.     Defendants concealed or otherwise failed to disclose, reveal, or provide notice to

4

customers, including Plaintiff, in Defendants' advertising, labeling or otherwise that these vehicles were designed without any engine immobilizer and are thus defective and not fit for the ordinary purposes for which the vehicles are used.

16.     The Defective Vehicles manufactured, designed, produced, distributed, and/or sold by Defendants, are easy to steal, not secure and therefore are worth less than they would be if they did not have this Defect.

17.     The Defective Vehicles fail to adhere to Federal Motor Vehicle Safety Standard ("FMVSS") 114 (49 CFR § 571.114), which states that "[t]he purpose of this standard is to decrease the likelihood that a vehicle is stolen, or accidentally set in motion" and "applies to **all passenger cars, and to trucks** and multipurpose passenger vehicles with a GVWR of 4,536 kilograms (10,000 pounds) or less."  FMVSS 114, S,2, S.3 (emphasis added).  The regulation further provides that "[e]ach vehicle **must** have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; **and** (b) Either steering, or forward self-mobility, of the vehicle, or both." FMVSS 114, S.5.1.1 (emphasis added).

18.     Failure to include an engine immobilizer is a violation of this safety standard and means that these vehicles can be stolen by simply removing part of the steering column cover, which exposes the ignition, and starting the engine with only a flathead screwdriver or USB plug-in and driven away.

19.     Defendants knew or should have known that an engine immobilizer was required to be installed on all new vehicles.  This information is easily available on the internet.  *See, e.g.*, https://outdoorfact.com/the-effects-of-engine-immobilizers-car-alarms-and-trackers-on-your-

auto-insurance/:[1]

Engine Immobilizer

Defined as a device that helps cars to start/ignite with the help of the correct key/knob, car immobilizers are increasingly becoming very essential when it comes to car safety. With engine immobilizers, you have a feature that will protect your car against hotwiring caused by would-be thieves.

Cars with Immobilizers

All cars manufactured after 1998 have immobilizers. Thus, look at your car's year of manufacture. If it was after 1998, it should have an engine immobilize[r].

20.     Social media has provided wide-spread information on how easily Defective Vehicles can be stolen.  For example, videos on the social media platform TikTok are enticing people to steal the Defective Vehicles with a "TikTok Kia challenge." Madeleine List, Miami Hisald, *TikTok trend blamed for spike in car thefts. These brands are being targeted the most* (July 25, 2022), available at https://www.miamihisald.com/news/nation-world/national/article263801328.html. *See also* Audrey Conklin, Fox News, *TikTok car theft challenge: Chicago area sees 767% increase in Hyundai, Kia thefts* (Aug. 25, 2022), https://www.foxnews.com/us/tiktok-car-theft-challenge-chicago-area-sees-767-percent-increase-hyundai-kia-thefts ("TikTok users are posting videos under the hashtag "Kia Boyz," teaching people how to start Kia or Hyundai vehicles without keys, using the tip of a phone charger or USB cable."). *See also* Thom Taylor, Motor Biscuit, *supra* (explaining that "the 'Kia Boys' are a viral group that steals Kia automobiles and then posts the theft on YouTube. It describes and encourages other groups to do similar crimes."). Numerous other stories have been published recently documenting this trend in Kia and Hyundai car thefts across the country.[2]

---

[1] Patrick Evans, Outdoor Fact (Jun. 9, 2020) (last visited Oct. 14, 2022).

[2] *See, e.g.* Kyeland Jackson, Star Tribune, *Kia vehicle thefts hit St. Paul, and there are few ways to stop them* (Jul. 22, 2022), available at https://www.startribune.com/a-wave-of-kia-vehicle-thefts-hit-st-paul-and-residents-have-few-ways-to-stop-it/600192369/; Ben Jordan, WTMJ-TV

21.     In fact, it is so easy to steal these vehicles that many perpetrators are children.  *See,*
*e.g.*. Savannah Louie, CBS46, *Teen 'Kia Boyz' thieves target Kia, Hyundai cars in Atlanta* (Jul.
20, 2022), available at  https://www.cbs46.com/2022/07/20/teen-kia-boyz-thieves-target-kia-
hyundai-cars-atlanta/ ("These Kia's are being taken all over the country," said Eldredge. "These
are young boys – I would be shocked if they could shave let alone have a driver's license at the
age they are. It's very disturbing young people are involved in this."); Frank Fernandez, The
Daytona Beach News-Journal, *After 'Kia Boys' social media videos, Kias and Hyundais targeted*
*for   theft   in   Volusia* (Jul.   29,   2022),   available   at   https://www.news-
journalonline.com/story/news/crime/2022/07/29/kia-boys-target-kias-and-hyundais-volusia-
teens-arrested-debary-car-theft/10184703002/ (reporting that three juveniles aged 14-17 had
stolen the car after they had watched "Kia Boys" videos online); Steve Levine, WSYX Columbus
(Aug. 5, 2022), *Family of teen killed in stolen Hyundai crash, says he was not driving when car*

---

Milwaukee, *Hyundais and Kias make up 68% of stolen cars this year in Milwaukee* (Sept. 23,
2021), available at  https://www.tmj4.com/news/local-news/hyundais-and-kias-make-up-68-of-
stolen-cars-this-year-in-milwaukee; Brook Endale, USA Today, *Police warn of rise in car thefts*
*in Kia, Hyundai models caused by possible design flaw* (Jun. 30, 2022), available at
https://www.usatoday.com/story/money/cars/2022/06/30/police-rise-car-thefts-kia-
hyundai/7776099001/?fbclid=IwAR3-
kmhAhHK52ffb80kjLUWlmvJrTIECM9_cPBg4iKJ8jleXzIDAg4MTw1U ("In Ohio, the Forest
Park Police Department is warning residents of a local increase in car thefts of Kia and Hyundai
brand vehicles, similar to instances reported in other cities across the country."); Courtney Ingalls,
Wavy.com, *Norfolk Police Department warns of increased Kia and Hyundai thefts* (Jul. 21, 2022),
https://www.wavy.com/news/local-news/norfolk/norfolk-police-department-warns-of-increased-
kia-and-hyundai-thefts/ ("The Norfolk Police Department is warning residents of a nationwide
increase in stolen vehicles manufactured by Kia and Hyundai."); Christine Byers, KSDK 5 On
Your Side, *Ignition design makes Hyundais and Kias easy to steal with USB cords* (Jul. 21, 2022),
https://www.ksdk.com/article/news/investigations/ignition-design-hyundais-kias-easy-steal-usb-
cord/63-0c1c1d13-0d72-43aa-841c-06e2db0113fa ("No matter where you live, no matter what
community you live in, if you have a Hyundai or a Kia, it's vulnerable."); Thom Taylor, Motor
Biscuit,   *Please   Don't   Buy   a   Kia   or   Hyundai   in   Milwaukee* (Nov.   3,   2021),
https://www.motorbiscuit.com/please-dont-buy-kia-hyundai-in-milwaukee/ ("[A]bout 70 percent
of all car thefts in Milwaukee are either Kias or Hyundais. And the numbers are on the rise.").

*wrecked*, available at https://www.msn.com/en-us/news/crime/family-of-teen-killed-in-stolen-hyundai-crash-says-he-was-not-driving-when-car-wrecked/ar-AA10kaLY (reporting that three 14-year old boys stole a Hyundai and were involved in a deadly crash that killed two of the boys and injured the third, and linking the teens to the "Kia Boys" trend).

22.    Many recent news stories have documented the Defect, which has been attributed to the significant increase in car thefts across the country.  "It can take as little as under a minute to steal some Hyundai and Kia models, and it's happening all across the country."  Annalise Frank, Axios Detroit, *Thieves across America are stealing Hyundais and Kias in seconds* (Aug. 27, 2022), https://www.axios.com/2022/08/27/kia-hyundai-thefts-stolen-usb-immobilizer-tiktok.    The following are just a few examples of increased thefts of Class Vehicles that are occurring nationwide:

- Detroit had 111 Kias stolen in July and 22 in the first nine days of August, per its police department. That's up from 23 in June and 11 or fewer in all previous months of 2022.

- Charlotte, N.C., police report 156 Kia and Hyundai thefts since June 20, a 346% increase from 35 incidents in the same timeframe last year.

- Per the NICB's 2021 Hot Wheels report, seven of the top 10 most stolen vehicles in Wisconsin were Kias or Hyundais. But none of those vehicles made the top 10 in the state in the 2020 report.

*Id*.

- "St. Paul, Minnesota is one of the areas hit hardest by Kia crimes. Officials report a 1300% increase in Kia thefts."

Savannah Louie, CBS46, *Teen 'Kia Boyz' thieves target Kia, Hyundai cars in Atlanta*, *supra*.

- In Grand Rapids, Michigan, 45 percent of stolen cars in June were either a Kia or

Hyundai, according to MLive. In St. Paul, Minnesota, it accounts for a quarter of car

thefts so far this year. And compared to last year, in St. Louis, Missouri, police have

seen a 254 percent rise in Kia thefts. For Hyundai, it is slightly lower at 222 percent.

Automotive News says it is seeing similar numbers out of Memphis, Tennessee,

Cincinnati, and Columbus, Ohio.

Thom Taylor, Motor Biscuit, *In Some U.S. Cities, Almost Half of Car Theft Is Kia and Hyundai*

(Jul. 21, 2022), https://www.motorbiscuit.com/some-u-s-cities-almost-half-car-theft-kia-hyundai/.

"Authorities are blaming the two carmakers for not having engine immobilizers on key fobs. This

is pretty much standard theft protection from most other manufacturers." *Id.*

23.     The Norfolk Police Department has even begun issuing these bulletins to residents:



*See* Courtney Ingalls, Wavy.com, *supra* n.2.

24.     Defendants have recently acknowledged this issue and have begun making engine

immobilizers standard on all 2022 models and beyond. *See* Clifford Atiyeh, Car and Driver,

*Hyundai, Kia Take Action after Cars Become Theft Targets in Milwaukee* (Dec. 11, 2021),

available   at   https://www.caranddriver.com/news/a38491394/hyundai-kia-thefts-milwaukee-

action/.

25.     One recent news story noted, "The nationwide rash of thefts has gotten so bad that Hyundai has finally come up with a solution. A new anti-theft security kit Hyundai developed in partnership with Compustar is now available. The kit includes both a kill switch and an alarm." Sebastian Blanco, Car and Driver, *Hyundai Charging Customers $170 for a Kit to Protect Its Easy-to-Steal Cars* (Oct. 1, 2022), https://www.caranddriver.com/news/a41477937/hyundai-security-kit-easy-to-steal-models/.  However, customers must pay $170 for the kit, and must also pay for its installation, which can cost up to $500.  *Id.* Kia is not offering a similar kit to Kia owners.  *Id*.

26.     In addition to the increased risk of theft, some Class Members may find it difficult to even find insurance for their vehicle. Andrew Yi, boingboing, *Progressive Insurance won't insure easily-stolen Kia and Hyundai cars in Colorado* (Aug. 16, 2022), https://boingboing.net/2022/08/16/progressive-insurance-halts-underwriting-some-kia-hyundai-cars-in-denver-co-and-other-states.html. *Id*. According to the story, Progressive has also stopped insuring Kia and Hyundai models in Milwaukee as well. *Id*.

27.     Defendants are responsible for knowing the regulations and vehicle standards with which their vehicles must comply. Defendants must have known their vehicles did not comply with the FMVSS and thus were defective in this manner but failed and refused to disclose this Defect to customers, despite having the capability and means to do so.

28.     Defendants had the capability and means to comply with the FMVSS and add an engine immobilizer or similar device, yet they failed to do so.

29.     As a result of the Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles, and insurance and other theft prevention costs have increased.

30.     A stolen vehicle is not a safe vehicle, and a vehicle that can be stolen very easily is not a vehicle that can be depended upon to provide reliable transportation.

31.     Reasonable consumers, like Plaintiff, expect and assume that a vehicle has at least a minimal anti-theft system included as standard equipment.  Plaintiff and Class Members further expect and assume that Defendants will not sell or lease vehicles with known design Defects and will disclose any such Defect to its customers prior to selling or leasing the vehicle or offer a suitable repair. They do not expect that Defendants would fail to disclose the Defect to them or fail to provide a remedy.

## V.     TOLLING OF THE STATUTE OF LIMITATIONS

32.     Plaintiff and the other Class Members were not reasonably able to discover the Defect until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

33.     Despite their due diligence, Plaintiff and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and the lack of an engine immobilizer was concealed from them.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and the other Class Members.

34.     Any applicable statute of limitation has also been tolled by Defendants' knowledge, active concealment, and denial of the defective nature of the Class Vehicles.

## VI.     CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3).   This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

11

36.     The Class is defined as:

**Class:** All individuals who purchased or leased any 2011-2021 Kia or 2015-2021 Hyundai vehicles with key ignitions in the State of Minnesota.

37.     Specifically excluded from the Classes are Defendants, Defendants' officers, directors, agents, trustees, parent corporations, subsidiaries, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

38.     Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

39.     **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are, inter alia, readily identifiable from information and records in Defendants' possession, custody, or control.

40.     **Typicality:** The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, paid for a Class Vehicle designed, manufactured, distributed and/or sold by Defendants in which an engine immobilizer was not present.  The representative Plaintiff, like all Class Members, has been damaged by Defendants' misconduct in that he has incurred or will incur the cost due to damage to the vehicle from its theft or attempted theft, costs associated with installing or purchasing an anti-theft system, and/or has experienced a loss in value of the vehicle. Further, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of fraudulent,

deliberate, and/or negligent misconduct resulting in injury to all Class Members.

41.   **Commonality:** There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

a.      Whether the Defendants designed and manufactured the Defective Vehicles without engine immobilizers;

b.      Whether the failure of the vehicles to have engine immobilizers makes them easier to steal, unsafe, and worth less than they would be if they had engine immobilizers;

c.      Whether Defendants knew or reasonably should have known about the Defect and, if so, how long Defendants have known of the Defect;

d.      Whether the defective nature of the Class Vehicles and the lack of an engine immobilizer constitutes a material fact;

f.      Whether Defendants either concealed or failed to disclose that the Class Vehicles lacked an engine immobilizer;

g.      Whether Defendants continued to manufacture, market, distribute, and sell the Defective Vehicles notwithstanding their knowledge of the defects' dangerous nature and risks of harm;

h.      Whether Defendants knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of the Class Vehicles from the consuming public;

i.      Whether Plaintiff and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

j.      Whether Defendants violated the Minnesota's Prevention of Consumer Fraud Act, and Minnesota's Unfair and Deceptive Trade Practices Act;

k.      Whether Defendants fraudulently concealed and/or failed to disclose material facts concerning the Class Vehicles; and

l.      Whether Defendants were unjustly enriched by the sale of the Defective Vehicles.

42.     **Adequate Representation:**  Plaintiff will fairly and adequately protect the interests of the Class.   Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

43.     **Predominance and Superiority:** Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the instant controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would, therefore, have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the court and the litigants and will promote consistency and efficiency of adjudication.

## VII.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of the Minnesota Prevention of Consumer Fraud Act,**
**Minn. Stat., §§ 325F. 68 *et seq.* ("MPCFA")**
**(On behalf of Plaintiff and the proposed Class)**

44.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

45.     Plaintiff, putative class members, and Defendants are persons within the context of the MPCFA, § 325F.68 subd. 3.

46.     The Class Vehicles are "merchandise" within the meaning of the MPCFA, Minn. Stat. § 325F.68.

47.     Defendants are engaged in deceptive trade practices within the context of the MPCFA, § 325F.69 subd. 1.

48.     Plaintiff and members of the putative Class purchased and/or leased Class Vehicles for personal family or household use.

49.     By failing to disclose and concealing the defective nature of the Class Vehicles from Plaintiff and Class Members, Defendants violated the MPCFA.

50.     Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving and did deceive a substantial portion of the purchasing public and imposed a serious risk of loss on the public.

51.     Defendants knew that the lack of an engine immobilizer or any anti-theft system in their Class Vehicles was an inherent design and/or manufacturing defect and rendered Class Vehicles to be unsuitable for their intended use.

52.     By failing to disclose the Defect, Defendants engaged in misrepresentation,

deception, or deceptive practices in the sale of the Defective Vehicles because Defendants failed

to disclose to the purchasing public that the vehicles were defective because that they lacked an

engine immobilizer, and by failing to disclose that the Defective Vehicles did not meet all federal

safety standards.

53.     The facts concealed or not disclosed by Defendants to Plaintiff and the other Class

Members are material because a reasonable consumer would have considered them to be important

in deciding Whether or not to purchase or lease the Class Vehicles, or to pay less for them.  Had

Plaintiff and other Class Members known that the Class Vehicles were defective, they would not

have purchased or leased the Class Vehicles or would have paid less for them.

54.     Plaintiff and the other Class Members are reasonable consumers who do not expect

that their vehicles will suffer from a Defect or fail to meet federal safety standards.  That is the

reasonable and objective consumer expectation for vehicles to have at least a minimal anti-theft

system installed.

55.     As a result of Defendants' misconduct, Plaintiff and the other Class Members have

been harmed and have suffered actual damages in that the Class Vehicles are defective and Class

Members have incurred increased costs or suffered financial losses as a result and will continue to

suffer actual damages.

56.     Whereas here, Plaintiff's claims inure to the public benefit, Minnesota's private-

attorney general statute, Minn. Stat. § 8.31, subd. 3a, allows individuals who have been injured

through a violation of the MPCFA to bring a civil action and recover damages together with costs

and disbursements, including reasonable attorneys' fees.

57.     Defendants used unfair methods of competition and unfair or deceptive acts or

practices in conducting their business and violated Minn. Stat. § 325F.69 and proximately caused

16

damage to Plaintiff and the Class Members.

58.     Accordingly, Plaintiff seeks damages, reasonable costs and attorneys' fees, an order

enjoining the acts and practices described above, and any other relief that the Court deems just and

proper.

### SECOND CAUSE OF ACTION

**Violation of the Minnesota's Unfair and Deceptive Trade Practices Act,
Minn. Stat., §§ 325D. 44 *et seq.* ("MUDTPA")
(On behalf of Plaintiff and the proposed Class)**

59.     Plaintiff incorporates and realleges each preceding paragraph as though fully set

forth herein.

60.     Plaintiff, members of the Class, and Defendants are persons within the context of

the MUDTPA, §§ 325D.10 *et seq.*

61.     By failing to disclose and concealing the defective nature of the Class Vehicles

from Plaintiff and Class Members, Defendants violated the §§ 325D.44 (5), (7), and (9).

62.     Defendants knew that their Class Vehicles failed to meet federal safety standards

with the lack of an engine immobilizer, which was an inherent design and/or manufacturing defect

and rendered Class Vehicles to be unsuitable for their intended use.

63.     Specifically, Defendants engaged in deceptive trade practices in violation of the

MUNDTPA by:

      a.     Representing that the Class Vehicles had characteristics, uses, and benefits

           that they did not have in violation of §§ 325D.44 (5).

      b.     Representing that the Class Vehicles were of a particular standard or quality

           when they were, in fact, defective in violation of §§ 325D.44 (7); and

      c.     Engaging in conduct which created a misunderstanding among Plaintiff and

the putative Class members as to the quality and security of the Class Vehicles.

64.    Minn. Stat. § 325D.13 provides that "no person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

65.    By failing to disclose the Defect, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

66.    The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding Whether or not to purchase or lease the Class Vehicles, or to pay less for them.  Had Plaintiff and other Class Members known that the Class Vehicles were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

67.    Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Defect or fail to meet federal safety standards.  That is the reasonable and objective consumer expectation for vehicles to adhere to federal safety standards and have at least a minimal anti-theft system installed.

68.    Whereas here, Plaintiff's claims inure to the public benefit, Minnesota's private-attorney general statute, Minn. Stat. § 8.31, subd. 3a, allows individuals who have been injured through a violation of the MUDTPA to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

69.    By engaging in the conduct herein, Defendants violated and continue to violate the MUDTPA and the similar laws of other states.

70.    As a result of Defendants' misconduct, Plaintiff and the other Class Members have

been harmed and have suffered actual damages in that the Class Vehicles are defective and Class Members have incurred increased costs or suffered financial losses as a result.

71.     Accordingly, Plaintiff seeks damages, an order enjoining the acts and practices described above, reasonable costs and attorneys' fees, and any other relief that the Court deems just and proper.

### THIRD CAUSE OF ACTION

**Fraudulent Omission**
**(On behalf of Plaintiff and the proposed Class)**

72.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

73.     Defendants knew or should have known that the Class Vehicles failed to meet federal safety standards by not being equipped with an engine immobilizer, which is an inherent design and/or manufacturing defect, and thus were not suitable for their intended use.

74.     Defendants intentionally and knowingly falsely concealed, suppressed, and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Class Vehicles are defective because they fail to meet federal safety standards by not being equipped with an engine immobilizer, exposing owners, drivers, passengers and members of the public to safety risks with the intent that Plaintiff and the other members of the Class would rely on Defendant's omissions. As a direct result of Defendants' fraudulent conduct, Plaintiff and the other members of the Class have suffered actual damages.

75.     As a result of Defendants' failure to disclose to Plaintiff and the other members of the Class the material fact that the Class Vehicles are defective because they fail to meet federal safety standards by not being equipped with an engine immobilizer, owners and lessors of the Class Vehicles are either at a complete financial loss when their vehicle is stolen, are required to

spend hundreds or thousands of dollars to repair their vehicles after a theft, pay to have anti-theft devices installed in their vehicles, and/or to sell their vehicles at a substantial loss. The fact that there are no engine immobilizers in the Class Vehicles is material because a reasonable consumer expects the Class Vehicles to comply with safety regulations and be equipped with at least minimal anti-theft protection, and Plaintiff and the other members of the Class had a reasonable expectation that the vehicles would not suffer from the Defect.

76.     The fact that the Class Vehicles fail to meet federal safety standards by not being equipped with an engine immobilizer is also material because it also presents a safety risk. Because of the Defect, the Class Vehicles are much more likely to be stolen, posing a danger to both the driver and any passengers who could be stranded if their vehicle is stolen while away from home, or to the public by having the Class Vehicles stolen and driven away by children and teenagers or other unsafe drivers, and potentially used to commit other crimes. Plaintiff and the other members of the Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Defect or would have paid less for the Class Vehicles.

77.     Defendants concealed or failed to disclose the true nature of the design and/or manufacturing Defects contained in the Class Vehicles in order to induce Plaintiff and Class Members to act thereon.  Plaintiff and the other Class Members justifiably relied on Defendants' omissions to their detriment. This detriment is evident from Plaintiffs' and Class Members' purchase or lease of Defendants' Class Vehicles.

78.     Defendants continued to conceal the defective nature of the Class Vehicles even after Class Members began to report the problems.

79.     As a direct and proximate result of Defendants' misconduct, Plaintiff and Class

Members have suffered and will continue to suffer actual damages.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment
### (On behalf of Plaintiff and the proposed Class)

80.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

81.     To the extent required by law, Plaintiff alleges this cause of action in the alternative, as permitted by Fed. R. Civ. P. 8.

82.     Plaintiffs and members of the Class conferred a tangible and material economic benefit upon Defendants by leasing or purchasing the Class Vehicles. Defendants were and should have been reasonably expected to provide Class Vehicles free from the Defect.

83.     Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of its false representations, omissions, and concealment of the Defect in the Class Vehicles.

84.     As a proximate result of Defendants' false representations, omissions, and concealment of the Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff and the other members of the Class. It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff and the other members of the Class.

85.     There is a direct relationship between Defendants on the one hand, and Plaintiff and the other Class Members on the other, sufficient to support a claim for unjust enrichment. Defendants failed to disclose the Defect to improve retail sales and leases. Conversely, Defendants knew that disclosure of the Defect would decrease sales and leasing of the Class Vehicles and would negatively impact the reputation of Defendants' brand among Plaintiff and the other Class

members. Defendants also knew that concealment and suppression of the Defect would discourage Plaintiff and the other Class members from seeking replacement or repair concerning the Defect, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

86.     Plaintiff and the other members of the Class are entitled to restitution in the amount of Defendants' ill-gotten gains, benefits, and profits, including interest, resulting from their unlawful, unjust. and inequitable conduct.

87.     Plaintiff and members of the putative class have been injured as a direct and proximate result of Defendants' conduct. Plaintiff and members of the putative class lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of their unjust conduct.

88.     Plaintiff and members of the Class would not have leased or purchased the Class Vehicles had they known about the Defect, or would have paid less than they did. It would be unjust and inequitable for Defendants to retain the economic benefits they received at the expense of Plaintiff and the Class.

89.     Plaintiff and the Class suffered damages in an amount to be determined at trial.

## VIII.     <u>PRAYER FOR RELIEF</u>

90.     Plaintiff, on behalf of himself and all others similarly situated, requests that the Court enter judgment against Defendants, and issue an order providing the following relief:

a.     That Defendants provide notice, in a form pre-approved by Plaintiff, to all Class Members and, in the notice, offer to repair, without charge, the Defect contained in the Class Vehicles;

b.     That Defendants immediately cease the sale and lease of the Class Vehicles at all of Defendants' authorized dealerships without first notifying the

purchasers or lessees of the Defect, and otherwise immediately cease to engage in the violations of the law set forth above;

c.    That Defendants pay damages and restitution in an amount to be proven at trial;

d.    An order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

e.    A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

f.    Any and all remedies provided pursuant to the Minnesota's Prevention of Consumer Fraud Act, Minnesota's Unfair and Deceptive Trade Practices Act, for unjust enrichment and for committing fraudulent omission;

g.    An award to Plaintiffs and Class Members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

h.    A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiff and Class Members;

i.    An award of attorneys' fees and costs, as allowed by law;

j.    An award of pre-judgment and post-judgment interest, as provided by law;

k.    Leave to amend the Complaint to confirm to the evidence produced at trial; and,

l.    Such other relief as may be appropriate under the circumstances.

## IX.    DEMAND FOR JURY TRIAL

91.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.


Dated: October 17, 2022                **REINHARDT WENDORF & BLANCHFIELD**


By: *s/ Roberta A. Yard*
Roberta A. Yard (322295)
Garrett D. Blanchfield (209855)
332 Minnesota Street, Suite W1050
Telephone: (651) 287-2100
Facsimile: (651) 287-2103
Email: r.yard@rwblawfirm.com
Email: g.blanchfield@rwblawfirm.com